# SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This **Settlement Agreement and Mutual General Release** (this "Agreement") is entered into as this **June 23, 2021**, by and between **CHRISTOPHER BANGS** ("**BANGS**"), having an address at 613 Gateway Avenue, Valley Cottage, New York 10989 and **QUEEN ELIZABETH REALTY CORP. ("QERC")**, a New York corporation, having a business address at 133--38 Sanford Avenue, Suite PHB, Flushing, New York 11355 For the purposes of this Agreement, **QERC** and **BANGS** are referred to individually as a "Party" and collectively as "the Parties."

## RECITALS

**WHEREAS**, on January 11th, 2021, **QERC** commenced a civil action against **BANGS**, at the Supreme Court of the State of New York, County of New York, entitled **QUEEN ELIZABETH REALTY CORP. -vs.- ROCKLAND ABSTRACT CORP., FIDELITY NATIONAL TITLE INSURANCE COMPANY, and CHRISTOPHER BANGS**, with **Index No. 650162//21** (the "Action"), asserting claims, *inter alia*, for conversion, breach of fiduciary duty, and declaratory relief related to a dispute concerning **BANGS'** activity as a principal of ROCKLAND ABSTRACT CORP., the title company in a mortgage transaction in which **QERC** borrowed $19,850,000.00 from Bank of America ("BoA"); and

**WHEREAS**, **QERC** alleges within the Action, *inter alia*, that **BANGS** engaged in conduct that resulted in failure to pay certain real estate taxes owed by **QERC** to The City of New York; and

**WHEREAS**, **BANGS** has yet to file an Answer and instead has relied on extensions of time granted by **QERC**; and

**WHEREAS**, **QERC** filed a bankruptcy petition under **Case No. 8:20-bk-73327** (the "**Bankruptcy Action**") on November 3, 2020, in the United States Bankruptcy Court for the Eastern District of New York pursuant to Chapter 11 of the United States Bankruptcy Code; and

**WHEREAS**, this Settlement Agreement is subject to the entry of an Order of the United States Bankruptcy Court for the Eastern District of New York, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, and unless and until and unless such an Order of Approval is entered, the Settlement Agreement shall not not effective; and

**WHEREAS BANGS** has transferred the Sum of FIVE HUNDRED SIXTY THOUSAND ($560,000.00) DOLLARS to the escrow account of The Law Offices of Hayes Young, P.A., in anticipation of the execution of the Agreement and ultimate approval by the United States Bankruptcy Court for the Eastern District of New York; and

**WHEREAS**, the Parties hereto, seeking to resolve all their differences amicably and to avoid the expense and uncertainties of further litigation and trial, wish to fully and finally resolve all claims that were, may have been, or could have been raised by either Party in this Action;

**NOW, THEREFORE**, in consideration of the promises, terms and provisions hereof, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

### 1. NOTICE OF DISCONTINUANCE

Subsequent to the execution of this Agreement, and ***upon approval*** of the same by the United States Bankruptcy Court for the Eastern District of New York, **QERC** or its counsel shall execute and forward to **BANGS** a Notice of Discontinuance of the entire Action. **BANGS** is thereafter authorized to file or e-file the Notice of Discontinuance with prejudice based on the transfer recited in Section 2 hereof.

### 2. PAYMENT, TAXES & ATTORNEYS' FEES

2.1 Subject to the terms hereof, **BANGS** has transferred the total sum of Five Hundred and Sixty Thousand US Dollars and No Cents (US $560,000.00) ([the **"Settlement Payment"**) in consideration of **QERC**'s execution of this Agreement. The Settlement Payment, which is presently being held in escrow by **QERC**'s attorney, shall be released to **QERC** upon the above-referenced Court approval.

2.2 All Parties shall each be responsible for payment of their own attorney's fees and other legal costs and expenses, and no Party has made any representations as to payment of such fees on behalf of another Party.

## 3. RELEASES

3.1 As used herein, the following terms shall have the following meanings:

"**QERC**" means **Queen Elizabeth Realty Corp.**, which owns and operates a certain commercial condominium property in New York, located at 68-80 Elizabeth Street, New York, New York 10013 and any direct or indirect predecessor in interest to **QERC** and any direct or indirect successor or assign of **QERC**. The term "**QERC entity**" means any one of the foregoing and any businesses conducted by, or assets **QERC** owned by any such entity, together with any successors and/or assigns thereof. "**QERC entities**" refers, collectively, to all of the foregoing entities and any business conducted by, or assets owned by any of the foregoing entities, together with any successors and/or assigns of any of the foregoing.

"**QERC Principal**" means Myint J. Kyaw a/k/a Jeffrey Wu.

3.2 **Release by BANGS. BANGS** on his own behalf, his predecessors, successors assigns, heirs executors, administrators, attorneys, representatives, agents, escrow agents and successors and assigns, and all persona or entities acting by, through, tinder, or in concert with **BANGS**, and each of them (each, a "**BANGS Releasing Party**" and collectively, the **BANGS** Releasing Parties, hereby **RELEASES and DISCHARGES** each and all of the following (each, a **QERC Releasee**," and collectively, the **QERC Releasees**):

    a. **QERC** each other **QERC** entity and the **QERC** Principals, together with **QERC**'s predecessors, successors, assigns, heroes and executors, administrators, presprestentiaves, agents, escrow agents, attorneys and all persona acting by, through, under or in concert with **QERC** and/or any **QERC** entity and/or any **QERC** Principal, and all of their respective past, present and future officers, directors, member, ananagers, principals, employees, heirs, executors, administrators,

attorneys, representatives, agents, escrow agents, successors, assigns, and all person acting by, through, under or in concert with them and each of them, **FROM ALL** actions, causes of action, sut9is, losses, liabilities, rights, andebts, dues, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, sums of money, accounts, reckonings, obligations, costs, losses, expenses (including attorneys' fees and costs actually incurred), liens, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages (including any special or punitive damages, bad faith damages, reliance damages, liquidated damages, and damages for humiliation and embarrassment), judgments, extents, executions, charges, complaints, claims (including, without limitation, any claim under any federal, state, or local law, rule, or regulation or any claim of fraud), grievances, counterclaims and demands, of every kind and nature whatsoever, which **BANGS** or any **BANGS** Releasing Party now has, or may ever have had, or hereafter can, shall, or may have against **QERC** or **QERC Releasee**, whether actual or contingent, now known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, in law, or equity, whether or not apparent or yet to be discovered, or which may hereafter develop, for, upon, or by reason of any matter, cause, act or omission, event, transaction, occurrence, or thing whatsoever from the beginning of time through the date of this Agreement. including without limitation, any and/or all of the following matters: (i) any matter or thing at issue in the Action and any Existing Agreement of any kind whatsoever between or among **BANGS** and/or any **BANGS** Releasing Party, on the one hand, and **QERC** and/or any **QERC** Releasee, on the other hand; (ii) any claims under any federal, state, or local law, rule or regulation (whether civil or criminal), and neither Party will bring or press any "charges" against the other Party; (iii) any claim relating to any tort or other common law, equitable, or statutory action (including, without limitation, conversion, defamation, slander, assault, battery, intentional or negligent infliction of emotional distress, trespass, ouster, nuisance, or negligence); (iv) any claim of any party for compensation or amounts owed, including, but not limited to,

with respect to any **QERC** Other Property; and (v) any claim or remedy at law or in equity, in each case, available to **BANGS** and/or any **BANGS** Releasing Party as against **QERC** and/or any **QERC** entity and/or any **QERC** Principal; *provided that* the foregoing releases shall exclude any obligations set forth in this Agreement and nothing in this Section 3.2 shall preclude or limit the rights of **BANGS** to enforce the covenants of **QERC** contained herein.

3.3 **Release by QERC.. QERC,** on its own behalf, its predecessors, successors, assigns, heirs, executors, administrators, attorneys, representatives, agents, escrow agents and successors and assigns, and all persons or entities acting by, through, under, or in concert with **QERC** or any **QERC** Entity (each, a "**QERC**" and, collectively, the "**QERC Releasing Parties**"; and, together with the **BANGS** Releasing Parties, collectively, the "**Releasing Parties**"), hereby **RELEASES AND DISCHARGES** each and all of the following (each, a "**BANGS Releasee**", and collectively, the "**BANGS Releasees**"; and, together with the **QERC** Releasees, collectively, the "**Releasees**"):

**BANGS**, together with **BANGS's** predecessors, successors, assigns, heirs, executors, administrators, representatives, agents, escrow agents, attorneys, and successors and assigns, and all persons acting by, through, under, or in concert with them, and their respective past, present and future officers, directors, members, managers, principals, employees, heirs, executors, administrators, attorneys, representatives, agents, escrow agents, successors, assigns, and all persons acting by, through, under, or in concert with them, and each of them, **FROM ALL** actions, causes of action, suits, losses, liabilities, rights, debts, dues, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, sums of money, accounts, reckonings, obligations, costs, losses, expenses (including attorneys' fees and costs actually incurred), liens, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages (including any special or punitive damages, bad faith damages, reliance damages, liquidated damages, and damages for humiliation and embarrassment), judgments, extents, executions, charges, complaints, claims (including, without limitation, any claim under any federal, state, or local law, rule, or regulation or any claim of fraud), grievances, counterclaims and demands, of every kind and nature whatsoever, which **QERC** or any **QERC** Releasing Party now has, or may ever have had, or hereafter can, shall, or may have against **BANGS** or any **BANGS** Releasee, whether actual or contingent, now known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, in law, or equity, whether or not apparent or yet to be discovered, or which may

hereafter develop, for, upon, or by reason of any matter, cause, act or omission, event, transaction, occurrence, or thing whatsoever from the beginning of time through the date of this Agreement. including without limitation, any and/or all of the following matters: (i) any matter or thing at issue in the Action and any Existing Agreement of any kind whatsoever between or among **BANGS** and/or any **BANGS** Releasing Party, on the one hand, and **BANGS** and/or any **BANGS** Releasee, on the other hand; (ii) any claims under any federal, state, or local law, rule or regulation (whether civil or criminal), and neither Party will bring or press any "charges" against the other Party; (iii) any claim relating to any tort or other common law, equitable, or statutory action (including, without limitation, conversion, defamation, slander, assault, battery, intentional or negligent infliction of emotional distress, trespass, ouster, nuisance, or negligence); (iv) any claim of any party for compensation or amounts owed; and (v) any claim remedy at law or in equity, in each case, available to **QERC** and/or any **QERC** Releasing Party as against **BANGS** and/or any **BANGS** Releasee; *provided that* the foregoing releases shall exclude any obligations set forth in this Agreement and nothing in this Section 3.3 shall preclude or limit the rights of **QERC** to enforce the covenants of **BANGS** contained herein.

3.4 **Further Assurances as to the General Mutual Releases.** Without limiting the generality of Sections 3.2 and 3.3 above, each of **BANGS** and **QERC**, respectively, as to himself or itself and as to each of their respective Releasing Parties, agrees:

(a) Neither Party or his respective Releasing Parties has filed with any governmental agency or court any type of action or report against the other Party hereto or such other Party's Releasees, other than the filings in the Action (which is being withdrawn with the e-filing a Stipulation of Discontinuance and with prejudice subsequent to the Settlement Payment), nor does such Party or his respective Releasing Parties currently know of any existing act or omission by the other Party or such Party's Releasees that may constitute a claim or liability excluded from this Agreement.

(b) Each Party understands that he may later discover claims or facts that may be different from, or in addition to, those that he or any of the other Releasing Parties, the other Party, or any other person or entity now knows or believes to exist, and which, if known at the time of signing this Agreement, may have materially affected this Agreement and such Party's decision to enter into it and grant the releases contained herein. Nevertheless, each Party intends to fully, finally and forever settle and release all claims that now exist, may exist, or previously existed, as set out in the releases contained above herein, whether known or unknown, foreseen or unforeseen,

or suspected or unsuspected, and the releases given herein are and will remain in effect as complete releases, notwithstanding the discovery or existence of such additional or different facts. Each Party hereby waives any right or claim that might arise as a result of such different or additional claims or facts.

(c) Each party warrants and represents that it has not sold, transferred, assigned or otherwise disposed of its interest in any of the claims which are released under this Agreement.

## 4. ACKNOWLEDGMENT OF SETTLEMENT

The Parties acknowledge that (a) the consideration set forth in this Agreement is in full settlement of all claims or losses of whatsoever kind or character that they have, or may ever have had, against the other Party, to the extent set forth in Section 3 above, and (b) by signing this Agreement, and accepting the consideration provided herein or in the Agreement and the benefits of it, they are giving up forever any right to seek further monetary or other relief from the other Party for any acts or omissions as described above.

## 5. RELEASE IS LEGALLY BINDING

The Parties intend the releases set forth in Sections 3.1, 3.2 and 3.3 of this Agreement to be (and, as of the date of this Agreement are) legally binding upon and shall inure to the benefit of **BANGS**, each **BANGS** Releasee, **QERC** and each **QERC** Releasee and their respective successors, assigns, executors, administrators, heirs, and estates. Moreover, the persons and entities referred to in the definition of Releasees, but not a signatory to this Agreement are express third-party beneficiaries of Sections 3.1, 3.2 or 3.3 hereof (as applicable) and the releases granted therein, and entitled to rely on such Sections (but no other provisions hereof) and have the right to enforce such releases directly. Neither **BANGS** nor **QERC** shall assign their respective releases in said Sections 3.2 or 3.3 (as applicable) or any right hereunder without the express prior written consent of the other (which consent may be withheld in the sole and absolute discretion of such non-assigning party).

## 6. POSSIBLE INVALIDITY

Should any term or provision of this Agreement (or the application of any such term or provision to any person or circumstance) to any extent be declared or be determined by any court to be unenforceable, illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said unenforceable, illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

## 7. GOVERNING LAW; DISPUTES

7.1 This Agreement and all related documents, and all matters arising out of or relating to this Agreement, whether sounding in contract, tort, or statute are governed by, and construed and enforced in accordance with, the laws of the State of New York, without regard to its rules regarding conflicts of law.

7.2 In the event of a dispute as to the interpretation, application or violation of this Agreement, including any breach of this Agreement, it is understood and agreed by the Parties that such disputes shall only be resolved before the New York State Supreme Court, County of New York, or the United States Bankruptcy Court for the Eastern District of New York, and the Parties submit to the jurisdiction of such court.

## 8. MODIFICATION OR TERMINATION

This Agreement and its provisions shall not be amended, modified, waived or terminated, or be deemed to have been amended, modified, waived or terminated, unless such amendment, modification, waiver or termination is contained in a writing, duly subscribed by both **BANGS** and **QERC** acknowledged with the same formality as this Agreement.

## 9. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements (including all Existing Agreements which are being terminated pursuant hereto), proposed or

otherwise, written or oral, concerning the subject matter hereof. There are no other (written or oral) agreements (express or implied) of any kind whatsoever between **BANGS**, on the one hand, and **QERC** and/or any **QERC** Entity and/or any **QERC** Principal, on the other hand, with respect to any matter whatsoever other than this Agreement.

## 10. RELIANCE ON OWN COUNSEL

In entering into this Agreement, **BANGS, QERC** and their respective Releasing Parties acknowledge that they have ample opportunity to seek legal counsel of their own choosing and have done so, to the extent each party has deemed appropriate, and that the terms of this Agreement (and, in particular the respective releases given by each Party in Sections 3.2 and 3.3 (respectively) are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party. **BANGS, QERC** and each of their respective Releasing Parties represent and acknowledge to each other that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other Party or such Party's Releasee with regard to the subject matter, basis, or effect of this Agreement or otherwise.

## 11. COVENANT NOT TO SUE

Each Party agrees and covenants not to sue, commence, voluntarily aid in any way, prosecute or cause to be commenced or prosecuted, or voluntarily participate in any administrative proceeding, suit, claim, or action, at law or in equity, that might now or ever be asserted in any jurisdiction against the other Party arising out of or pertaining to any claim released in this Agreement or any claim arising under any Existing Agreement which is being terminated pursuant to the terms hereof.

## 12. NOTICE PROVISION

All notices that are required under this Agreement shall be given in writing to the Parties by either (i) personal delivery; (ii) Registered or Certified Mail, in each case, return receipt request and postage prepaid U.S.; or (iii) nationally recognized overnight courier, signature required, with all fees prepaid, to the following addresses:

If to **BANGS**:

Mr. Christopher Bangs
613 Gateway Avenue
Valley Cottage, NY 10989

If to **QERC**:

QUEEN ELIZABETH REALTY CORP.
133-38 Sanford Avenue, Suite PHB
Flushing, New York 11355

- with a copy to:

The Law Offices of Hayes Young, P.A.
233 Broadway, Suite 2707
New York NY 10279
Attn: Hayes Young, Esq.

Another address may be designated by any Party in a notice pursuant to this Section. All notices shall be deemed complete upon receipt by the receiving party of the first copy of the notice as indicated by the date on the signed receipt, or, if (a) a party rejects or otherwise refuses to accept the notice, or (b) if the notice cannot be delivered because of a change in address for which no notice was given, then upon the rejection, refusal or inability to deliver the notice.

### 13. EFFECTIVENESS

This Agreement shall become effective immediately following its execution by all Parties and delivery of the Settlement Payment. This Agreement may be executed in counterparts, including by facsimile, with the same effect as if all the Parties have signed the same document. All counterparts shall be construed together and shall constitute a single Agreement.

### 14. MISCELLANEOUS

(a) The headings within this Agreement are purely for convenience and

are not to be used as an aid in interpretation.

(b) This Agreement shall not be construed more strictly against one Party than the other merely by virtue of which Party or Party's counsel prepared the first or any subsequent draft of this Agreement.

(c) No oral statement or written matter concerning this Agreement or any of its provisions shall have any force or effect.

(d) Neither party will make any application in or to any court or tribunal inconsistent with the provisions of this Agreement.

READ THE FOREGOING DOCUMENT CAREFULLY.

IT INCLUDES A RELEASE OF CLAIMS.

**IN WITNESS WHEREOF,** and intending to be legally bound, each of BANGS and QERC has caused this Agreement to be executed as of the date(s) set forth below.

_____

Christopher Bangs

Dated: June      , 2021

**QUEEN ELIZABETH REALTY CORP,**

By: _____

Name:   Myint J. Kyaw, a/k/a Jeffrey Wu

Title:   President

Dated: June 22, 2021

STATE OF NEW YORK ) : ss.:
COUNTY OF ROCKLAND )

On the _____ day of June, 2021, before me, the undersigned, personally appeared CHRISTOPHER BANGS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of whom the individual acted, executed the instrument.

_____
Notary Public

STATE OF NEW YORK ) : ss.:
COUNTY OF QUEENS )

On the 22nd day of June, 2021, before me, the undersigned, personally appeared Hyatt J. Kyaw of QUEEN ELIZABETH REALTY CORP. personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of whom the individual acted, executed the instrument.

_____
Notary Public

WAI YING LAM
Notary Public, State of New York
No. 01LA6106789
Qualified in Queens County
Commission Expires March 15, 2024

are not to be used as an aid in interpretation.

    (b) This Agreement shall not be construed more strictly against one Party than the other merely by virtue of which Party or Party's counsel prepared the first or any subsequent draft of this Agreement.

    (c) No oral statement or written matter concerning this Agreement or any of its provisions shall have any force or effect.

    (d) Neither party will make any application in or to any court or tribunal inconsistent with the provisions of this Agreement.

**READ THE FOREGOING DOCUMENT CAREFULLY.**

**IT INCLUDES A RELEASE OF CLAIMS.**

**IN WITNESS WHEREOF,** and intending to be legally bound, each of BANGS and QERC has caused this Agreement to be executed as of the date(s) set forth below.

_/s/ Christopher Bangs_

Christopher Bangs

Dated: June 23, 2021

**QUEEN ELIZABETH REALTY CORP.**

By: _____

Name:  Myint J. Kyiaw, a/k/a Jeffrey Wu

Title:   President

Dated: June _____, 2021

STATE OF NEW YORK ) : ss.:
COUNTY OF ROCKLAND )

On the 23rd _____ day of June, 2021, before me, the undersigned, personally appeared CHRISTOPHER BANGS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of whom the individual acted, executed the instrument.

_____
Notary Public

VERONICA E. CUCCIA
NOTARY PUBLIC, STATE OF NEW YORK
No. 01CU6052359
QUALIFIED IN ROCKLAND COUNTY
MY COMMISSION EXPIRES DEC 11, 20__

STATE OF NEW YORK ) : ss.:
COUNTY OF QUEENS )

On the _____ day of June, 2021, before me, the undersigned, personally appeared _____ of QUEEN ELIZABETH REALTY CORP., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of whom the individual acted, executed the instrument.

_____
Notary Public