UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

Chapter 11

LUCKY STAR-DEER PARK LLC,

Case No.: 20-73301-reg

                  Debtor.
----------------------------------------------------------X

In re:

Chapter 11

FLUSHING LANDMARK REALTY LLC,

Case No. 20-73302-reg

                  Debtor.

----------------------------------------------------------X

## **41-60 MAIN STREET LLC'S FIRST AMENDED CHAPTER 11
PLAN OF LIQUIDATION FOR THE DEBTORS**

**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900
Jerold C. Feuerstein, Esq.
Daniel N. Zinman, Esq.
Stuart L. Kossar, Esq.

*Attorneys for 41-60 Main Street LLC*

Dated: New York, New York
      October 24, 2022

# INTRODUCTION

Proponent, 41-60 Main Street LLC ("**41-60 Main**" or the "**Proponent**"), hereby propose the following First Amended Chapter 11 Plan (the "**Plan**") for the above captioned debtors and debtors-in-possession, Lucky Star-Deer Park LLC ("**Lucky Star**"), and Flushing Landmark Realty LLC ("**Flushing Landmark**" and, together with Lucky Star, the "**Debtors**") pursuant to Section 1121(a) of Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). Reference is made to the "Disclosure Statement" for risk factors and a summary and analysis of the Plan and certain related matters. 41-60 Main is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code. Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the provisions of the Plan, the Proponent expressly reserve the right to alter, amend, revoke or modify the Plan, as needed, at any time prior to substantial consummation thereof.

## ARTICLE 1

## DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in this Plan are to the respective section of, article of or exhibit to this Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as stated otherwise in this Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to this Plan in its entirety rather than to only a particular portion of this Plan; (ix) the rules of construction set forth in Section 102 of the Bankruptcy Code shall govern construction of this Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

1.1 "**41-60 Main Street LLC Claim**" means the claim of 41-60 Main Street LLC against the Debtors, which shall be allowed in the amount of $143,988,021.20, as of the Petition Date, plus interest from the Petition Date at the default rate specified in the note underlying the 41-60 Lucky Star Secured Claim, protective advances, and applicable fees and charges.

1

**1.2** "**41-60 Main Street Secured Claim**" means the portion of the 41-60 Main Street LLC Claim that is secured by a valid, enforceable Lien on the Properties.

**1.3** "**41-60 Main Street Unsecured Claim**" means the portion of the 41-60 Main Street LLC Claim that is not secured by a valid, enforceable Lien on the Properties, if any, due to the 41-60 Main Street Secured Claim being undersecured, taking into account the effect and limitations of Section 506(b) of the Bankruptcy Code. As between Flushing Landmark and Lucky Star, the 41-60 Main Street Unsecured Claim, if any, shall be allocated *pari passu* based on the relative net proceeds received in connection with the Sale of the Flushing Landmark Property and the Lucky Star Property, respectively.

**1.4** "**Administrative Expense**" or "**Administrative Claim**" means any cost or expense of administration of this Case, other than Statutory Fees, allowable under Section 503(b) of the Bankruptcy Code.

**1.5** "**Allowed**" when used with "Claim" or "Administrative Expense" means a Claim or Administrative Expense against a Debtor that has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim or Proof of Administrative Expense Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by a Debtor in the Schedules as liquidated in amount and not disputed or contingent.

**1.6** "**Allowed Interest**" means an Interest in a Debtor that has not been disallowed and with respect to which (i) a proof of interest has been timely filed or, (ii) if no proof of interest has been timely filed, that has been or hereafter is listed by a Debtor in the Schedules as liquidated in amount and not disputed or contingent.

**1.7** "**Assumption Notice**" shall have the meaning set forth in section 5.1 of this Plan.

**1.8** "**Auction**" means the auction to be conducted pursuant to the Bid Procedures in connection with the Sales.

**1.9** "**Available Cash**" means all cash of each of the Debtors on the Effective Date, including the net proceeds of the Sales of the Properties, together with any cash generated after the Effective Date by the Proponent in connection with any Causes of Action the Proponent may bring or continue.

**1.10** "**Bankruptcy Code**" means Title 11 of the United States Code, as amended from time to time and effective as to the Case as filed on the Petition Date.

**1.11** "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York or the United States District Court for the Eastern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to Section 157(d) of Title 28 of the United States Code.

4864-8565-7135, v. 4

**1.12** **"Bankruptcy Rules"** mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York, in either case, as now in effect or hereinafter amended.

**1.13** **"Bar Date"** means the date by which proofs of claim on account of pre-Petition Date obligations of each Debtor must be filed as established by Order of the Bankruptcy Court.

**1.14** **"Bid Procedures"** means those procedures approved by the Bankruptcy Court which govern the conduct of the Auction for the Property, the qualification of bidders to bid at each Auction and other matters related thereto, which Bid Procedures shall be attached as an exhibit to the Disclosure Statement and shall be subject to approval of the Bankruptcy Court at the Confirmation Hearing.

**1.15** **"Broker"** shall mean Cushman & Wakefield, the real estate broker that shall conduct the Auction for each of the Properties in accordance with the Bid Procedures.

**1.16** **"Business Day"** means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

**1.17** **"Cases"** means the above captioned cases (along with certain other debtors not encompassed by this Plan)[1] under Chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court on the Petition Date and styled *Lucky Star Deer-Park LLC*, Case No. 20-73301-reg and *In re Flushing Landmark Realty LLC*, Case No. 20-73302-reg.

**1.18** **"Cash"** means, on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction (other than as may be provided in this Plan or in the Confirmation Order) no later than the next Business Day.

**1.19** **"Causes of Action"** means, without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits damages, judgments, claims, and demands whatsoever, whether know or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in law, equity, or otherwise.

**1.20** **"Claim"** means claim as defined in Section 101(5) of the Bankruptcy Code.

**1.21** **"Class"** means a category of substantially similar Claims or Interests as established pursuant to Article 3 of this Plan.

**1.22** **"Closing"** means the closing of the Sales of the Properties to the Successful Bidder(s) at which point title to each of the Properties that have been sold will be transferred

---

[1] Specifically, the two other previously jointly administered cases not encompassed by this Plan are *In re Victoria Towers Development Corp. (Case No. 20-73303)* and *In re Queen Elizabeth Realty Corp. (Case No. 20-7330?)*.

to the Successful Bidder(s) in accordance with the Sale Approval Order. The Closing, unless ordered otherwise by the Bankruptcy Court, shall take place on or immediately before the Effective Date.

**1.23** **"Confirmation" or "Confirmation Date"** means the date on which the Confirmation Order is entered.

**1.24** **"Confirmation Hearing**" means the hearing(s) at which the Court hears testimony and/or argument concerning whether to confirm this Plan.

**1.25** **"Confirmation Hearing Date"** means the date the Court holds the Confirmation Hearing. If said hearing is conducted on more than one day, each day shall be a Confirmation Hearing Date.

**1.26** **"Confirmation Order"** means an Order confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

**1.27** **"Creditor"** means a holder of a Claim that has not been disallowed pursuant to a Final Order.

**1.28** **"Debtors"** shall have the same meaning as such term is defined above.

**1.29** **"Disbursing Agent"** means The Kantrow Law Group, PLLC.

**1.30** **"Disclosure Statement"** means the Disclosure Statement for this Plan, including all exhibits, attachments or amendments thereto, approved by Final Order of the Bankruptcy Court as containing "adequate information" within the meaning of Section 1125 of the Bankruptcy Code.

**1.31** **"Disputed Claim"** means (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; and (b) any Claim (including an Administrative Expense), or portion thereof, that has not been disallowed and with respect to which an objection or action concerning the allowance and/or extent thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection or action has not been resolved by a Final Order.

**1.32** **"Disputed Claim Reserve"** means the segregated account or accounts established by the Disbursing Agent, at a banking institution that is an authorized bank depository in the Eastern District of New York, pursuant to section 8.8 of this Plan.

**1.33** **"Effective Date"** means the later of (i) one Business Day after the Confirmation Order becomes a Final Order; or (ii) the date all conditions to the Effective Date have been satisfied or waived by the entity entitled by this Plan to waive such condition and the Sale has closed.

4

**1.34** **"Entity"** means entity as defined in Section 101(15) of the Bankruptcy Code.

**1.35** **"Estate"** means the estate created on the Petition Date pursuant to Section 541 of the Bankruptcy Code for each of the Debtors.

**1.36** **"Executory Contract"** means an executory contract within the meaning of Section 365 of the Bankruptcy Code.

**1.37** **"Final Order"** means an order which is: (i) not subject to a pending appeal; (ii) no longer appealable, or if appealed, affirmed on appeal with no further appeals possible; except that the Confirmation Order shall be deemed a Final Order on the first Business Day after entry thereof so long as no stay of a Court of competent jurisdiction staying consummation of the Plan.

**1.38** **"Foreclosure Action"** means the action brought by the Proponent in the Supreme Court of the State of New York, Suffolk County, originally styled *41-60 Main Street LLC v. Flushing Landmark Realty LLC, et al.* and under Index No. 604354/2020.

**1.39** "**Flushing Landmark**" shall have the same meaning as such term is defined above.

**1.40** "**Flushing Landmark Available Cash**" means Available Cash of Flushing Landmark.

**1.41** **"Flushing Landmark General Unsecured Claim"** means a Claim that is not entitled to priority under Bankruptcy Code Section 503(b) or 507 and/or is not secured by a lien against property of Flushing Landmark including the 41-60 Main Street Unsecured Claim allocable to Flushing Landmark, but shall exclude Administrative Expenses, a Statutory Fee, a Priority Claim, 41-60 Main Street Secured Claim.

**1.42** "**Flushing Landmark Other Secured Claim**" means a Claim that is secured by a lien against property of Flushing Landmark other than the 41-60 Main Street Secured Claim taking into account the value of such property.

**1.43** "**Flushing Landmark Priority Claim**" means a Priority Claim against Flushing Landmark.

**1.44** **"Flushing Landmark Property"** means the real property thereon commonly known as and located at 41-60 Main Street, Flushing, New York 11355 (Block: 5121, Lot: 20).

**1.45** **"Flushing Landmark Sale"** means a sale of the Flushing Landmark Property pursuant to the Bid Procedures.

**1.46** **"Interests"** means any and all equity interests held in the Debtors.

**1.47** **"Interest Holder"** means the holder of an Allowed Interest in the Debtor.

**1.48** "**Legal Holiday**" means a Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

**1.49** "**Lien**" means a charge, hold, claim, or encumbrance upon any property of the Estate.

**1.50** "**Lucky Star**" shall have the same meaning as such term is defined above.

**1.51** "**Lucky Star Available Cash**" means Available Cash of Lucky Star.

**1.52** "**Lucky Star General Unsecured Claim**" means a Claim that is not entitled to priority under Bankruptcy Code Section 503(b) or 507 and/or is not secured by a lien against property of Lucky Star including the portion of the 41-60 Main Street Unsecured Claim allocable to Lucky Star, but shall exclude Administrative Expenses, a Statutory Fee, a Priority Claim, 41-60 Main Street LLC Lucky Star Secured Claim or Other Lucky Star Secured Claim.

**1.53** "**Lucky Star Other Secured Claim**" means a Claim that is secured by a lien against property of Lucky Star other than the 41-60 Main Street Secured Claim taking into account the value of such property.

**1.54** "**Lucky Star Priority Claim**" means a Priority Claim against Lucky Star.

**1.55** "**Lucky Star Property**" means the real property commonly known as known as and located at 377 Carlls Path, Deer Park, New York 11729 (District: 0100, Section: 065.00, Block: 01.00, Lots: 033.000, 034.000, 035.000, 037.000, 039.007 and 039.008).

**1.56** "**Lucky Star Sale**" means a sale of the Lucky Star Property pursuant to the Bid Procedures.

**1.57** "**Mezz Claim**" means the Claim filed by Landmark Portfolio Mezz, a creditor of Jeffrey Wu in the chapter 7 bankruptcy case of *In re Myint J. Kyaw a/k/a Jeffrey Wu* (Case No. 20-72407), and that is secured by a pledge against the membership interests in the Debtors.

**1.58** "**Order**" means an order of the Bankruptcy Court.

**1.59** "**Petition Date**" means October 30, 2020, the date on which this Case was commenced by the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code by the Debtor.

**1.60** "**Plan**" means this Chapter 11 Plan of Liquidation of the Debtors, as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

**1.61** "**Priority Claim**" means that portion of an Allowed Claim entitled to priority under Section 507 of the Bankruptcy Code other than an Administrative Claim, an Other

6

Secured Claim, the 41-60 Secured Claim, the Mezz Claim or Statutory Fees.

**1.62** **"Privilege"** means any attorney-client privilege, work-product privilege or other privilege or immunity held by the Debtors before the Effective Date attaching to any documents or communications (whether written or oral) related to the Causes of Action.

**1.63** **"Professional"** means all professionals employed pursuant to Bankruptcy Court order by the Debtors under applicable sections of the Bankruptcy Code.

**1.64** **"Proof of Claim"** means a Proof of Claim filed pursuant to Section 501 of the Bankruptcy Code and the applicable Bankruptcy Rules.

**1.65** **"Property Causes of Action**" means Causes of Action that run with or directly relate to the Properties, including tax abatements, but and excluding any Causes of Action against the Proponent, or its partners, members, assignees, employees, directors, managers, officers or agents acting in their capacity as such.

**1.66** **"Properties"** means collectively, the Lucky Star Property and the Flushing Landmark Property.

**1.67** **"Pro Rata"** means the proportion an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

**1.68** **"Sales"** means the sale of the each of the Properties pursuant to the Bid Procedures.

**1.69** **"Sale Approval Order"** means the order approving the Sales of the Properties to the Successful Bidder.

**1.70** **"Schedules"** mean the schedules of assets and liabilities and the Statement of Financial Affairs filed by the Debtors with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

**1.71** **"Statutory Fees"** mean all fees and charges assessed against the Estate under Section 1930 of title 28 of the United States Code.

**1.72** **"Successful Bidder(s)"** means the bidder(s) who the Court determined made the highest and/or best bid for each of the Properties and whose bid is approved by the Court. To the extent the Successful Bidder(s) are unable to Close and the Sale is to a back-up bidder, the term "Successful Bidder(s)" shall apply to such back-up bidder.

**1.73** **"Transfer Taxes"** means any and all stamp taxes or similar taxes, if and as applicable, within the meaning of Section 1146(a) of the Bankruptcy Code.

**1.74** **"Unexpired Lease"** means an unexpired lease within the meaning of Section

365 of the Bankruptcy Code.

# ARTICLE 2

## TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, this Plan does not classify Statutory Fees or Administrative Expenses. Such Claims, to the extent Allowed, shall receive the treatment provided in this Article 2 in full satisfaction, release and discharge thereof.

### 2.1 Statutory Fees

All fees and charges payable to the United States Trustee, including the Statutory Fees and any applicable interest thereon, that are due on or prior to the Effective Date, shall be paid no later than ten (10) days after the Effective Date from Available Cash of the applicable Debtor. Such fees, together with any applicable interest thereon, that may become due after the Effective Date shall be paid as they become due by the Proponent until the entry of a final decree closing the Chapter 11 Case, or until the Chapter 11 Case is converted or dismissed, whichever occurs earlier from Available Cash of the applicable Debtor. Statutory Fees owed by Lucky Star shall be paid from Lucky Star Available Cash and Statutory Fees owed by Flushing Landmark shall be paid from Flushing Landmark Available Cash.

### 2.2 Administrative Claims

(a) All Administrative Claims, other than Administrative Claims of professionals, must be filed and served no later than fourteen (14) days after entry of the Confirmation Order. Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (a) the Effective Date, (b) the date payment of such Claim is due under the terms thereof or applicable law, or (c) three (3) Business Days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between a Debtor and the holder of such Claim; provided, however, that any Administrative Claim incurred by a Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

(b) All Professionals, shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to Section 330 of the Bankruptcy Code no later than fourteen (14) days following the Confirmation Date. Any such application timely filed shall be deemed to be an Administrative Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application. Objections to any Professional's application for compensation or reimbursement must be timely filed and served upon such Professional, the Debtors and the Disbursing Agent in accordance with the Bankruptcy Rules or any order entered by the Bankruptcy Court. Upon entry of a Final Order approving such an application, the fees shall be paid on the later of seven days after the entry of such Order and the Effective Date or in accordance with this Plan or as otherwise agreed

8

to by the Professional and the Proponent.  Allowed Administrative Claims against Lucky Star will be paid from Lucky Star Available Cash and Allowed Administrative Claims against Flushing Landmark shall be paid from Flushing Landmark Available Cash.

## ARTICLE 3

## CLASSIFICATION OF CLAIMS AND INTERESTS AND IMPAIRMENT

Except as may otherwise be provided in Article 2, Allowed Claims and Allowed Interests are classified as set forth in this Article 3. A Claim or Interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

### 3.1    Class 1 – Lucky Star Other Secured Claim

Class 1 consists of the claim of any Lucky Star Other Secured Claim.  To the extent necessary, each Lucky Star Other Secured Claim in Class 1 shall constitute a separate subclass. The Lucky Star Other Secured Claims are unimpaired under the Plan.

### 3.2    Class 2 – 41-60 Main Street Secured Claim

Class 2 consists of the 41-60 Main Street Secured Claim against both Lucky Star and Flushing Landmark.  Since the 41-60 Main Street Secured Claim is the same Claim against both Debtors, the Claim is contained within one class.  To the extent necessary, Class 2 shall constitute two separate subclasses: a Lucky Star 41-60 Main Street Secured Claim Class and a Flushing Landmark 41-60 Main Street Secured Claim Class.  The Plan allows the 41-60 Main Street Secured Claim at $143,988,021.20, as of the Petition Date, plus interest and fees after the Petition Date.  The amount of the 41-60 Main Street Secured Claim shall be determined based on the extent to which the 41-60 Main Street Secured Claim is secured by an interest in the Lucky Star Property and the Flushing Landmark Property, which shall be determined by the amount of the proceeds received from the Lucky Star Sale and the Flushing Landmark Sale.  To the extent that the 41-60 Main Street Secured Claim is not secured by an interest in the Lucky Star Property and the Flushing Landmark Property, the resulting unsecured portion of the 41-60 Main Street Secured Claim shall constitute the 41-60 Main Street Unsecured Claim, which shall be a claim in Class 4 (Lucky Star General Unsecured Claims) and Class 9 (Flushing Landmark General Unsecured Claims). The 41-60 Main Street Secured Claim is impaired under the Plan.

### 3.3    Class 3 – Lucky Star Priority Claims

Class 3 consists of the Lucky Star Priority Claims.  The Lucky Star Priority Claims are unimpaired under the Plan.

### 3.4    Class 4 – Lucky Star General Unsecured Claims

Class 4 consists of the Lucky Star General Unsecured Claims. The Lucky Star General Unsecured Claims are impaired under the Plan.

### 3.5 Class 5 - Mezz Claim

Class 5 consists of the Mezz Claim against both Lucky Star and Flushing Landmark. Since the Mezz Claim is the same Claim against both Debtors, the Claim is contained within one class. To the extent necessary, Class 5 shall constitute two separate subclasses: a Lucky Star Mezz Claim Class and a Flushing Landmark Mezz Claim Class. The Mezz Claim is impaired under the Plan.

### 3.6 Class 6 – Interests in Lucky Star

Class 6 consists of all Interests in Lucky Star. The Interests in Lucky Star are not impaired under the Plan.

### 3.7 Class 7 – Flushing Landmark Other Secured Claims

Class 7 consists of all Flushing Landmark Other Secured Claims. To the extent necessary, each Flushing Landmark Other Secured Claim in Class 1 shall constitute a separate subclass. The Flushing Landmark Other Secured Claims in Class 7 are unimpaired under the Plan.

### 3.8 Class 8 – Flushing Landmark Priority Claims

Class 8 consists of all Flushing Landmark Priority Claims. The Flushing Landmark Priority Claims in Class 8 are unimpaired under the Plan.

### 3.9 Class 9 – Flushing Landmark General Unsecured Claims

Class 9 consists of all Flushing Landmark General Unsecured Claims. The Flushing Landmark General Unsecured Claims in Class 9 are impaired.

### 3.10 Class 10 – Interests in Flushing Landmark

Class 10 consists of all Interests in Flushing Landmark. The Interests in Flushing Landmark are unimpaired under the Plan.

## ARTICLE 4

## TREATMENT OF CLAIMS AND INTERESTS

### 4.1 Class 1 – Lucky Star Other Secured Claim

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and with the exception of holders of Lucky Star Other Secured Claims who waive any distribution under the Plan on account of their Class 1 Lucky Star Other Claims against Lucky Star, each holder of an Allowed Class 1 Lucky Star Other Secured Claim will receive

10

on account of such claim payment in full from Lucky Star Available Cash on the Effective Date or as soon thereafter as is reasonably practicable or, in the Proponent's sole discretion, the property of Lucky Star on which the holder of such Lucky Star Other Secured Claim has a lien securing such Claim.

### 4.2 Class 2 – 41-60 Main Street Secured Claim

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each holder of an Allowed 41-60 Main Street Secured Claim will receive on account of such Claim: (a) one or both Properties pursuant to a credit bid at the Sale of the Properties; and/or (b) a distribution of Lucky Star Available Cash sufficient to allow for payment in full of 41-60 Main Street Secured Claim from the proceeds of the Sale of the Properties. If the Proponent (or its nominee(s), designee(s) or assignee(s)) is the Successful Bidder and Closes on one or both Properties following the Sale, the amount of such credit bid shall be deducted from the amount remaining to be due on the 41-60 Main Street Claim. The payment on account of the 41-60 Main Street Secured Claim, however, may be reduced pursuant to section 6.2 of the Plan in order to allow for the payments necessary to be made on or about the Effective Date under this Plan, including with respect to distributions to be made on account of Claims in Class 1, Class 3, Class 7, and Class 8, Administrative Expenses and Statutory Fees. In exchange for this treatment, 41-60 Main Street will waive any right to payment on any guaranty or other claim from the bankruptcy estate in the bankruptcy case of *In re Myint J. Kyaw a/k/a Jeffrey Wu* (Case No. 02-72407) and its liens against property held by and claim against the debtor in *In re Victoria Towers Development Corp.* (Case No. 20-73303).

### 4.3 Class 3 - Lucky Star Priority Claims

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each holder of an Allowed Lucky Star Priority Claim will receive on account of such Claim payment in full on or about the Effective Date, or as soon thereafter as is practicable.

### 4.4 Class 4 – Lucky Star General Unsecured Claims

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, the holders of the Allowed Class 4 Lucky Star General Unsecured Claims will receive on account of such Claims a *pro rata* distribution of Lucky Star Available Cash after payment in full to Class 1 Claims, the Class 2 Claim, the Class 3 Claim, and Statutory Fees and Administrative Claims of Lucky Star, with interest at the default rate specified in the applicable note for the Class 2 Claim and interest at the Federal Judgment Rate for the other Claims and fees; provided, however, that the Proponent will guaranty a distribution of $21,944.00 to holders of Claims in Class 4 other than the 41-60 Main Street Unsecured Claim, the Proponent agreeing to waive the right to receive any distribution from such $21,944.00 as a member of this Class.

### 4.5 Class 5 – Mezz Claim

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and with the exception of the holder of the Mezz Claim who waive any distribution under the Plan

on account of its Class 5 Mezz Claim, the holder of the Mezz Claim shall receive: (a) a distribution from Flushing Landmark Available Cash up to payment in full after payment in full to Claims in Class 2, Class 7, Class 8, and Class 9, and Statutory Fees and Administrative Claims against Flushing Landmark, with interest at the default rate specified in the applicable note for the Class 2 Claim and interest at the Federal Judgment Rate for the other Claims and fees; and (b) a distribution from Lucky Star Available Cash up to payment in full after payment in full to Claims in Class 1, Class 2, Class 3, and Class 4, and Statutory Fees and Administrative Claims against Lucky Star, with interest at the default rate specified in the applicable note for the Class 2 Claim and interest at the Federal Judgment Rate for the other Claims and fees.

### 4.6     Class 6 – Interests in Lucky Star

Holders of Allowed Class 6 Interests in Lucky Star shall continue to retain and maintain such Interests in Lucky Star and the Post-Confirmation Lucky Star following the Effective Date of the Plan in the same percentages as existed as of the Petition Date. Additionally, to the extent that there is any Lucky Star Available Cash after full payment of all Statutory Fees and Administrative Claims against Lucky Star and Claims in Class 1, Class 2, Class 3, Class 4 and Class 5, with interest from the Petition Date onwards at the rates set forth in the applicable Note(s) as to the Claim in Class 2 and Class 5, and interest from the Petition Date onwards at the Federal Judgment Rate as to all other Claims and Fees, with interest as to all such Classes being paid in full prior to any payments being made on account of principal, each holder of an Allowed Class 6 Interest in Lucky Star shall receive such remaining Lucky Star Available Cash, pro rata, in accordance with their respective percentage interests in Lucky Star.

### 4.7     Class 7 – Flushing Landmark Other Secured Claims

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and with the exception of holders of Flushing Landmark Other Secured Claims who waive any distribution under the Plan on account of their Class 7 Flushing Landmark Other Secured Claims, each holder of an Allowed Class 7 Flushing Landmark Other Secured Claim will receive on account of such claim payment in full from Flushing Landmark Available Cash on the Effective Date or as soon thereafter as is reasonably practicable or, in the Proponent's sole discretion, the property of Flushing Landmark on which the holder of such Flushing Landmark Other Secured Claim has a lien securing such Claim.

### 4.8     Class 8 – Flushing Landmark Priority Claims

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and with the exception of holders of Flushing Landmark Priority Claims who waive any distribution under the Plan on account of their Class 8 Flushing Landmark Priority Claims each holder of an Allowed Class 8 Flushing Landmark Priority Claim on account of such claim payment will receive payment in full from Flushing Landmark Available Cash on or about the Effective Date, or as soon thereafter as is practicable.

12

### 4.9 Class 9 – Flushing Landmark General Unsecured Claims

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and with the exception of holders of Flushing Landmark General Unsecured Claims who waive any distribution under the Plan on account of their Class 9 Flushing Landmark General Unsecured Claims, each holder of an Allowed Class 9 Flushing Landmark General Unsecured Claim will receive on account of such claim a *pro rata* distribution of Flushing Landmark Available Cash after all payments to the Class 2 Claim, Class 7 Claims, and Class 8 Claim, and Statutory Fees and Administrative Claims against Flushing Landmark, with interest from the Petition Date onwards at the rates set forth in the applicable Note(s) as to the Claim in Class 2, and interest from the Petition Date onwards at the Federal Judgment Rate as to all other Claims and Fees, with interest as to all such Classes being paid in full prior to any payments being made on account of principal; provided, however, that the Proponent will guaranty a distribution of $32,252.41 to holders of Claims in Class 9 other than the 41-60 Main Street Unsecured Claim, the Proponent agreeing to waive the right to receive any distribution from such $32,252.41 as a member of this Class.

### 4.10 Class 10 – Interests in Flushing Landmark

Holders of Allowed Class 10 Interests in Flushing Landmark shall continue to retain and maintain such Interests in Flushing Landmark and the Post-Confirmation Flushing Landmark following the Effective Date of the Plan in the same percentages as existed as of the Effective Date. Additionally, to the extent that there is any Flushing Landmark Available Cash after full payment of all Statutory Fees and Administrative Claims against Flushing Landmark and Claims in Class 2, Class 5, Class 7, Class 8 and Class 9, with interest from the Petition Date onwards at the rates set forth in the applicable Note(s) as to the Claim in Class 2 and Class 5, and interest from the Petition Date onwards at the Federal Judgment Rate as to all other Claims and Fees, with interest as to all such Classes being paid in full prior to any payments being made on account of principal, each holder of an Allowed Class 5 Interest in Lucky Star shall receive such remaining Flushing Landmark Available Cash, pro rata, in accordance with their respective percentage interests in Flushing Landmark.

## ARTICLE 5

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 5.1 Treatment of Executory Contracts; Bar Date for Rejection Claims

All Executory Contracts or Unexpired Leases to which the Debtors are a party as of the Effective Date, other than residential leases, which were not previously rejected, assumed, or assumed and assigned by the Debtors shall be rejected and disaffirmed under the Plan as of the Effective Date in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code, unless an Executory Contract or Lease is listed as assumed and assigned to a Successful Bidder on a notice to be filed with the Bankruptcy Court (the "**Assumption Notice**"), with such notice being served by the Successful Bidder on the counterparty to each such Executory Contract or Unexpired Lease, no later than twenty one (21) days prior to the

Effective Date, in which case such Executory Contract or Unexpired Lease shall be assumed and assigned to such Successful Bidder if no objection is made to such assumption and assignment or if an objection is timely made, following an order of the Bankruptcy Court. On the Effective Date, the Debtors will provide the Successful Bidder(s), or their nominee, designee, or assignee, an assignment and assumption of all residential leases at each of the Properties and the right to collect any and all rent arrears from such tenants.

### 5.2    Claims Arising From Rejection, Expiration or Termination

Holders of Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease must file in the Bankruptcy Court and serve on the Proponent a proof of claim on or before the date that is 21 days  after the entry of the Confirmation Order, or such other date as the Bankruptcy Court may order. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims of the applicable Debtor under the Plan, subject to objection by the Proponent. After receipt of such proof of claim, the Proponent shall have 14 days to file an objection, failing which such Claim shall be an Allowed Claim.

## ARTICLE 6

## IMPLEMENTATION OF THE PLAN

### 6.1    Implementation

(a) The Broker shall conduct the Auction of each of the Properties in accordance with the Bid Procedures. Thereafter, the Proponent shall consummate the sale of the Properties to the Successful Bidder(s) consistent with the Bid Procedures and the Sale Approval Orders. The Bid Procedures shall provide that the Proponent (or its nominee(s), designee(s) or affiliate(s)) may make a credit bid up to the full Allowed amount of the 41-60 Main Street Claim (including post-petition protective advances, interest, fees, costs and expenses), although they are under no obligation to do so at the Sales. Notwithstanding anything else herein to the contrary, the Successful Bidder(s) may take the Properties subject to the Proponent's mortgage, which may be assigned to a lender to the Successful Bidder(s). The Broker's fees shall be paid from the proceeds of the Auction, or from a buyer's premium.

(b) The Properties shall be sold in the following order:  first, the Lucky Star Property; then the Flushing Landmark Property. Following the Sale of the Lucky Star Property, the amount of the Allowed 41-60 Main Street Claim (including post-petition protective advances, interest, fees, costs and expenses) available for credit bidding on the Flushing Landmark Property shall be reduced by the amount of the net proceeds calculated based on winning bid at the auction for the Lucky Star Property. If there are no bids for the Lucky Star Property other than 41-60 Main Street's credit bid, the amount of the credit shall be deemed to be $30,000,000. If the Lucky Star Property and the Flushing Landmark Property are sold, collectively, for more than the total amount of the 41-60 Main Street Claim, any additional net proceeds left over after paying the 41-60 Main Street Claim in full (with interest

at the default rate and all costs, expenses and fees) will distributed to the Disbursing Agent to become Lucky Star Available Cash and Flushing Landmark Available Cash pro rata based on the total net sale prices of each such Property.

(c) The Confirmation Order shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code that, among other things: (A) directs the Debtors to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Properties to the Successful Bidder(s) and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan and if the Debtors refuse to execute or deliver or join in the execution or delivery of any such instrument, the Proponent shall be authorized to execute, deliver or join in the execution or delivery of such instrument on the Debtors' behalf; (B) directs each of the Debtors to transfer all cash on hand to the Disbursing Agent immediately, which cash shall become part of the Available Cash for each applicable Debtor; and (C) directs the Disbursing Agent, on or about the Effective Date, to make the payments required under this Plan to be made on or about the Effective Date. Pursuant to Section 1146(a) of the Bankruptcy Code, the deed conveying the Properties in accordance with the Sale and any deed further conveying the property with two years following the Sale by the Successful Bidder(s) (or its nominee(s), designee(s), or affiliate(s)) shall be an instrument of transfer in connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Taxes, mortgage recording tax or similar tax, and, to the extent provided by Section 1146(a) of the Bankruptcy Code, if any, shall not be subject to any state, local or federal law imposing sales tax. All proceeds of the Sale (after payment of applicable expenses (including property taxes owed on each of the Properties) and any distribution owed to the 41-60 Main Street Secured Claim (Class 2)) shall be deposited with the Distribution Agent and become Available Cash for each applicable Debtor.

### 6.2    Funding

Except as set forth elsewhere in this Plan, all payments required to be made under this Plan shall be made by the Disbursing Agent in accordance with the terms of this Plan from Available Cash. In the event that the Available Cash on the Effective Date is insufficient to fund the Plan distributions required to be made on the Effective Date fully: (a) any shortfall will be funded by the Proponent on or before the Effective Date, with any such shortfall funding constituting an administrative claim against the applicable Debtor's estate payable from Available Cash of the applicable Debtor after the Effective Date (such shortfall shall be funded by reducing the distribution to be made on the Class 2 Claim or, if and to the extent that such distribution is insufficient, the distribution to be made on the Class 2 Claim.

### 6.3    Execution of Documents

On the Effective Date, the Debtors, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of this Plan. Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtors shall be authorized to execute any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved

15

in this Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation and if the Debtors refuses to execute or deliver any such documents or notices, the Proponent shall be authorized to execute such documents and/or notices on the Debtors' behalf, and the Confirmation Order shall expressly so provide.

### 6.4 Filing of Documents

Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by this Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

### 6.5 Preservation of Rights of Action

Except as otherwise provided in the Plan, the right of the Successful Bidder(s) to commence, prosecute or settle the Property Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Property Cause of Action against them as any indication that the Successful Bidder(s) will not pursue any and all available Property Causes of Action against them. Except to the extent any Cause of Action against a Person is expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Proponent and the Successful Bidder(s) expressly reserve all Property Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Property Causes of Action upon or after the confirmation or consummation of the Plan.

On the Effective Date: (a) all Property Causes of Action shall be transferred to the Successful Bidder(s) and all other Causes of Action shall be controlled by the Proponent on behalf of the applicable Debtor; (b) all Privileges (including attorney-client and attorney work product) and all rights under any confidentiality agreements owned by the Debtors on the Effective Date that relate to the Property Causes of Action shall be transferred to the Successful Bidder(s) and that relate to all other Causes of Action shall be transferred to the Proponent. The Successful Bidder(s) and the Proponent shall have the right to enforce or waive such Privileges and rights as it sees fit in its discretion.

### 6.6 Preservation of Books and Records

On the Effective Date, all books and records of the Debtors shall be transferred to the Successful Bidder(s) and, thereafter, the Successful Bidder(s) shall have the right to use, maintain and/or dispose of the books and records as they see fit in its discretion; provided, however, the Successful Bidder(s) shall provide access to the Debtors' books and records to the Proponent as the Proponent may reasonably request.

16

## ARTICLE 7

## RESERVED

## ARTICLE 8

## PROVISIONS GOVERNING DISTRIBUTIONS

**8.1     Disbursing Agent**

All Distributions under this Plan shall be made by the Disbursing Agent who shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. All cash received by the Disbursing Agent shall be kept in a segregated escrow account maintained at a banking institution that is an authorized depository in the Eastern District of New York.  The Disbursing Agent shall not be compensated for services rendered under the Plan and shall not be required to secure a bond. The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal conduct, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the Disbursing Agent's receipt of the Available Cash and ending on the date that all disbursements contemplated by the Plan have been distributed.  The Disbursing Agent shall **not** be deemed to be an officer, fiduciary or agent of the Debtors. Furthermore, the Disbursing Agent shall have the express authority to execute a deed to the Properties and other conveyance documents in place (including, but not limited to the appropriate transfer tax returns), instead of members of the Debtors, or other authorized parties of the Debtors, and shall have no other powers or authority with respect to the Debtors. The Disbursing Agent shall have no obligation to file income tax returns or similar reports with the applicable taxing authorities, which obligations shall remain with the Debtors.  In addition to the foregoing, the Disbursing Agent shall be entitled to open and maintain an Interest on Lawyers Account (IOLA) with Kriss and Feuerstein LLP at an Eastern District of New York authorized depository.

**8.2     Rights and Powers of the Disbursing Agent**

The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) make all Distributions contemplated hereby, (iii) employ and compensate professionals to represent it with respect to its responsibilities and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

**8.3     Timing of Certain Distributions Under the Plan**

Except as otherwise provided in this Plan, and subject to Sections 8.7, 8.8 and 8.9 of this Plan, any payments, distributions or other performance to be made pursuant to this Plan on account of any Disputed Claim shall be deemed to be timely made if made on or within five (5) days following the later of (i) the Effective Date, (ii) the expiration of any applicable objection deadline with respect to such Disputed Claim, or (iii) such other times provided in this Plan.

### 8.4 Method of Payment

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to this Plan shall be made by check drawn on a domestic bank. Any escrowed, reserved or segregated funds will be held at a banking institution that is an authorized banking depository in the Eastern District of New York.

### 8.5 Objection Deadline

Unless otherwise ordered by the Bankruptcy Court or provided in this Plan, the Proponent may file and serve any objection to any Claim or Interest at any time, but in no event after the Effective Date for Claims that are otherwise entitled to payment on the Effective Date or, for all Claims that are otherwise entitled to payment after the Effective Date, the later to occur of (i) ninety (90) days following the Effective Date; or (ii) sixty (60) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed with the Bankruptcy Court, unless the time is extended by the Bankruptcy Court.

### 8.6 Prosecution of Objections

After the Effective Date, the Proponent shall have authority to file, prosecute, settle, compromise, withdraw or resolve objections to as its sees fit in its discretion. The rights of anyone who has objected to such Claim(s) prior to the Effective Date as to such objection shall be transferred to the Proponent. After the Effective Date, the Proponent may file, prosecute, settle, compromise, withdraw or resolve objections to any other claims.

### 8.7 No Distribution Pending Allowance

No payment or distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Disputed Claim are withdrawn or resolved by Final Order.

### 8.8 Escrow of Cash Distributions

On any date that distributions are to be made under the terms of this Plan, the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Expenses or as Priority Claims pursuant to Sections

18

503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax and (iii) any amount due but not payable on the Effective Date on account of Administrative Expenses or claims entitled to priority pursuant to Sections 503 and 507 of the Bankruptcy Code. The Disbursing Agent shall also segregate any interest, dividends or proceeds of such Cash, if any. Such Cash, together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto. Any escrowed, reserved or segregated funds will be held at a banking institution that is an authorized banking depository in the Eastern District of New York.

### 8.9 Distribution After Allowance

Within fourteen (14) days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

### 8.10 Investment of Segregated Cash and Property

To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by Section 345 of the Bankruptcy Code; provided, however, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds other than for liability for the violation of federal securities laws or any related regulations promulgated thereunder by the Securities and Exchange Commission and/or Financial Industry Regulatory Authority. Any escrowed, reserved or segregated funds will be held at a banking institution that is an authorized banking depository in the Eastern District of New York.

### 8.11 Delivery of Distributions

Except as provided in Sections 8.12, 8.13 and 8.14 of this Plan, distributions to holders of Allowed Claims and Allowed Interests shall be made: (1) at the addresses set forth on the respective Proofs of Claim or Proofs of Interests Filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address.

### 8.12 Undeliverable Distributions

(a) If the distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, the Disbursing Agent will make reasonable attempts to locate the holder of the Allowed Claim or Allowed Interest. Any further undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such

time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution (each, an "<u>Unclaimed Distribution</u>"). A distribution becomes an Unclaimed Distribution if three months have elapsed since a distribution is returned to the Disbursing Agent as undeliverable or six months have elapsed since a distribution check has gone uncashed and if no notice has been provided to the Disbursing Agent by the holder of the claim to which such distribution relates containing a valid address for such holder. If such a notice is provided, then, after receipt of such additional information as the Disbursing Agent may require to confirm the identity, address and ownership of such Claim, the Disbursing Agent shall make a distribution of all amounts reserved for such undeliverable distribution or unclaimed check to such Claim holder at the address provided in such notice within 14 days thereafter. All Unclaimed Distributions shall become Available Cash of the applicable Debtor and shall be distributed in accordance with this Plan.

(b) Nothing contained in this Plan shall require the Disbursing Agent to attempt to locate any holder or an Allowed Claim of an Allowed Interest.

### 8.13    Set-offs

Upon three (3) days prior written notice to the affected Creditor, the Disbursing Agent may, but shall not be required to, set-off against the distributions to be made pursuant to this Plan the claims, obligations, rights, causes of action and liabilities of any nature that the Debtors may hold against the holder of an Allowed Claim on or prior to the Effective Date, <u>provided, however</u>, that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtors, the Proponent, or the Disbursing Agent of any such claims, obligations, rights, causes of action and liabilities that a Debtor has or may have against such holder.

### 8.14    Disallowance

Except as provided in section 5.1 hereof, any Disputed Claim for which no Proof of Claim has been filed on or prior to the Bar Date shall be disallowed and expunged as of the Effective Date.

### 8.15    Surrender of Instruments; Execution of Satisfactions and Releases.

(a)    Notwithstanding any other provision of the Plan, no Creditor that holds a note or other instrument evidencing such Creditor's Claim or Interest may receive any Distribution with respect to such Claim or Interest unless and until the original note or other original instrument evidencing such Claim or Interest shall have been validly surrendered to the Disbursing Agent at the sole cost and expense of such Creditor, except to the extent the Property is transferred to the Successful Bidder(s) subject to the Proponent's lien.

(b)    Any Cash or property to be distributed pursuant to the Plan on account of any such Claim shall, pending surrender, be treated as an Undeliverable Distribution pursuant to section 8.12 of the Plan.

4864-8565-7135, v. 4

(c)    In the event any Creditor is unable to surrender a Note or other instrument evidencing a Claim against the Debtors that has been destroyed, lost or stolen, such entity may receive a Distribution with respect to such Claim by presenting to the Disbursing Agent, in a form acceptable to the Disbursing Agent:  (i) proof of such entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Disbursing Agent and all other entities deemed appropriate by the Disbursing Agent from any loss, action, suit or any claim whatsoever which may be made as a result of such entity's receipt of a Distribution under the Plan.

(d)    All questions as to the validity, form or eligibility of any Note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court.  Neither the Debtors nor the Disbursing Agent shall be under any duty to give notification of defects in such tender or shall incur liability for failure to give notification of such defects.

## ARTICLE 9

## DISCHARGE AND RELEASES

### 9.1    Injunction

Except (i) as otherwise provided in this Plan, (ii) as otherwise provided under Final Order entered by the Bankruptcy Court, or (iii) with respect to the Debtors' obligations under this Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date: (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the any property of the Estate, including the Properties sold under this Plan (except to the extent such Properties are sold subject to the Proponent's lien); or (b) the creation, perfection or enforcement of any lien or encumbrance against any property of the Estate, including the Properties sold under this Plan (except to the extent such Property is sold subject to the Proponent's lien).  Since this Plan provides for the liquidation of all or substantially all of the property of the Estate, the Confirmation of the Plan will not result in a discharge of the Debtor's pre-Petition Date Claims.

### 9.2    Limitation of Liability

The Proponent, nor any of its respective, managers, members, nor any of its agents or employees (acting in such capacity) nor any professional person employed by it, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, prosecution, dissemination, Confirmation, consummation or administration of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of property under this Plan, or any other action taken or omitted to be taken in connection with the Case or this Plan, except as may be expressly provided for in such agreements or documents, and except for willful misconduct or gross negligence, breach of fiduciary duty, criminal conduct, ultra vires actions or the disclosure of confidential information that causes actual damages.  In addition, any release exculpation or limitation of

21

liability provided for in this Plan shall not release any attorney from any obligations owed under Rule 1.8(h) of the New York Rules of Professional Conduct for malpractice liability. Nothing in the Plan nor the Confirmation Order shall affect a release of any claim by the United States Government or any of its agencies or any state and local authority, including without limitation any claim arising under environmental laws or any criminal laws of the United States or any state and local authority against (i) the Debtors, (ii) any of the Debtors' members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives, and assigns. In addition, subject to Sections 524 and 1141 of the Bankruptcy Code, the releases, exculpations, and limitations of liability described herein shall not preclude police, federal tax, or regulatory agencies from fulfilling their statutory duties.

### 9.3    Plan and Confirmation Order as Release

From and after the Effective Date, a copy of the Confirmation Order and this Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to this Article 9 of this Plan.

### 9.4    Revesting of Assets

Consistent with Sections 1123(a)(5)(A) and 1141 of the Bankruptcy Code, and except as may be otherwise provided in this Plan, title to all assets and property of the estate of the Debtors not otherwise addressed in this Plan shall pass to, and vest in, the Debtors, free and clear of all Claims, Liens, charges and other rights of creditors arising prior to the Effective Date. On and after the Effective Date, the Post-Confirmation Debtors may conduct its financial affairs and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court, except as otherwise provided in this Plan or in the Confirmation Order.

## ARTICLE 10

## CONDITIONS TO CONFIRMATION AND THE EFFECTIVE DATE

### 10.1    Conditions for Confirmation

In addition to meeting the requirements of Section 1129 of the Bankruptcy Code, the following conditions shall be conditions to the Confirmation of this Plan: entry of the Confirmation Order, which shall be satisfactory to the Proponent in form and substance.

### 10.2    Conditions to the Effective Date

The following shall be conditions to the Effective Date of this Plan. The Proponent may waive a condition by filing a "Notice of Waiver of Condition" with the Bankruptcy Court on the Court's Electronic Court Filing System:

(a) the Confirmation Order, in form and substance satisfactory to the Proponent in its sole discretion, and the Sale Order for each of the Properties, in form and substance

22

satisfactory to the Proponent in their discretion, shall have been entered; and

(b) all actions required to be taken to implement the Confirmation Order including the transfer of title to the Properties at the Closing to the Successful Bidder(s) shall have occurred and any contribution necessary to fund the distributions to be made on or about the Effective Date in full shall have been deposited with the Disbursing Agent.

# ARTICLE 11

## MISCELLANEOUS PROVISIONS

### 11.1    Orders in Aid of Consummation

Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by this Plan.

### 11.2    Compliance with Tax Requirements

In connection with this Plan, the Debtors, the Proponent and the Disbursing Agent, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under this Plan shall be subject to such withholding and reporting requirements; provided, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

### 11.3    Due Authorization by Creditors

Each and every Creditor who accepts the distributions provided for under this Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in this Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by this Plan, or obligations undertaken by such Creditor under this Plan.

### 11.4    Amendments

On notice to all creditors and parties in interest including the United States Trustee, and upon the appropriate opportunity to object, this Plan may be altered, amended or modified by the Proponent, in writing and signed by the Proponent, at any time before the substantial consummation of this Plan, as provided in Sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019; provided however, that no material modifications of this Plan will be made subsequent to Confirmation absent notice to all creditors and parties in interest including the United States Trustee, and upon the appropriate opportunity to object thereto.

### 11.5    Revocation

4864-8565-7135, v. 4

The Proponent may revoke or withdraw this Plan at any time prior to entry of the Confirmation Order; provided, however, that the Plan may not be withdrawn once the Properties have been sold. If this Plan is revoked or withdrawn or if no Confirmation Order is entered, this Plan shall be null and void, and nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors; or (ii) prejudice in any manner the rights of the Proponent or any other party in any further proceedings involving the Debtors or their Estates.

## 11.6 Filing of Additional Documents

Except as otherwise provided in this Plan, on or before the Effective Date, the Proponent may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Debtors up to the Effective Date and the Disbursing Agent and/or the Proponent after the Effective Date shall be responsible for filing quarterly post-confirmation status reports with the Bankruptcy Court by not later than the 20th day after the conclusion of each calendar quarter. After the Effective Date, the Disbursing Agent shall pay all quarterly fees required under 28 U.S.C. § 1930 and applicable interest under 31 U.S.C. § 3717, until the earlier of (a) conversion or dismissal of this Chapter 11 Case or (b) entry of a final decree closing this Chapter 11 Case.

## 11.7 Section Headings

The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

## 11.8 Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## 11.9 Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

## 11.10 Notices

All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a) if to the Debtors, 133-38 Sanford Avenue, Suite PHB, Flushing New York 11355, with a copy to Fred Kantrow, Esq., The Kantrow Law Group, PLLC, 6901 Jericho Turnpike, Suite 230, Syosset, New York 11791;

        (b)     if to the Proponent, 41-60 Main Street LLC, 520 Madison Avenue, Suite 3501, New York, New York 10022, Attn: Shoshana Carmel, with a copy to Kriss & Feuerstein LLP, 360 Lexington Avenue, Suite 1200, New York, New York 10017, Attn: Jerold C. Feuerstein, Esq., Daniel N. Zinman, Esq. and Stuart Kossar, Esq.;

        (c)     if to any Creditor or Interest holder, at: (i) the addresses set forth on the respective Proofs of Claim or Proofs of Interests Filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address; and

        (d)     if to any Entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

### 11.11  Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 11.12  Other Actions

Nothing contained herein shall prevent the Debtor, the Proponent, Interest Holders, or Creditors from taking such actions as may be reasonably necessary to consummate this Plan, although such actions may not specifically be provided for within this Plan.  In accordance with Rule 3022-1 of the Local Bankruptcy Rules for the Eastern District of New York, within fourteen (14) days following the full administration of the Estate, the Proponent will file, on notice to the United States Trustee, an application and proposed order for a final decree pursuant to Bankruptcy Rule 3022, without prejudice to the Court's ability to reduce or extend the time to file such application.

### 11.13  Severability

In the event any provision of this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

### 11.14  Business Day

In the event that this Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

## ARTICLE 12

## RETENTION OF JURISDICTION

## 12.1   Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a) Insure that this Plan and the Sale of the Property are consummated, and to enter any Order pursuant to Section 1142(b) of the Bankruptcy Code, to compel the Debtors and any other necessary party, to take such action and execute such documents to effectuate this Plan;

(b) Consider any modification of this Plan proposed pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

(c) Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

(d) Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for any period ending on or before the Effective Date;

(e) Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(f) Ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of this Plan;

(g) Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters (including Causes of Action), and any other matters or grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(h) Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions (including, but not limited to any injunction with respect to Guaranty Claims), and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of Article 7 of this Plan;

(i) Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

4864-8565-7135, v. 4

(j) Modify this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan or Disclosure Statement with the consent of the Debtors and any other interested party affected by such modification;

(k) Remedy any defect or omission or reconcile any inconsistency in any Order, this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan, to the extent authorized herein or in the Bankruptcy Code;

(l) Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of this Plan;

(m) Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n) Determine any dispute arising under or related to this Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by this Plan or the Confirmation Order;

(o) Determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Proponent or any contract, instrument, release or other agreement or document created in connection with this Plan or Disclosure Statement; and

(p) Enter an Order or Final Decree concluding the Case.

### 12.2    Post-Closing Jurisdiction

Notwithstanding the entry of a final decree or an Order closing the Case, the Bankruptcy Court shall retain jurisdiction to reopen the Case for the purpose of enforcing, by injunction or otherwise, the terms of this Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE 13

## CONFIRMATION REQUEST

### 13.1    Confirmation Request

The Proponent hereby request Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.

4864-8565-7135, v. 4

Dated: New York, New York
October 24, 2022

**KRISS & FEUERSTEIN LLP**

By:     */s/ Jerold C. Feuerstein*
Jerold C. Feuerstein, Esq.
Daniel N. Zinman, Esq.
Stuart L. Kossar, Esq.
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900

*Attorneys for 41-60 Main Street LLC*

**41-60 Main Street LLC**

By:     */s/ Shoshana Carmel*
Shoshana Carmel, Director

28